Green, J.
delivered the opinion of the court.
1. The first question for consideration is, whether this was a good tender?
By the constitution of the United States, nothing can be a tender in payment of debts, but gold and silver coin. It is insisted, however, that by the act of 1820, ch. 11, sec. 2, a redemption is authorized on the payment or tender of the money bid at the sale, and ten per cent interest thereon, in such bank notes as were receivable on executions; and that, as by the act of 181-9, ch. 19 sec-, 1, notes on the bank of the State of Tennessee and its branches, and notes on the Nashville bank and its branches? and such other notes as passed at par with them, were made receivable on executions, consequently, the notes tendered in the case now under consideration passing at par *245 With those enumerated above, the tender of them was lawful.
The answer to this argument is, that the constitution of the United States is the supreme law; and that no law can be valid, .which, in violation of that instrument, shall attempt to make any thing but gold and silver coin a tender.
The constitutionality of the act of 1819, ch. 19, in an elaborate and able opinion delivered by Judge Haywood, in Townsend vs. Townsend and others, (Peck’s Rep. 1) was fully discussed, and after mature deliberation, it was decided by this court to be unconstitutional and void. That decision was satisfactory to tire bar, and to tire country, when made, and so far as we know, has been universally approved of ever since.
It is easy to perceive the effect of that decision upon the present question. That act made certain bank notes receivable on executions, and the act of 1820 made such bank notes as were receivable on executions, a good tender, to authorize the redemption of land.- Does it not follow, that if the act of 1819 was void, so that no bank notes were receivable on executions; the act of 1820 does not make them a good tender, for it only makes that a good tender which was receivable on executions. In this construction, there is consistency in the two acts; but to suppose that nothing but specie should _be receivable on executions, and yet, that the bank notes mentioned in the act of 1819 should be receivable in' redemption of the land purchased at execution sale, would present the most •absurd and incongruous state of things. According to the argument, a creditor would not be bound -to receive on the execution, any thing but gold and silver coin; but if he became the purchaser of the debtor’s land, he could be paid off in bank notes fifty per cent below par. If this be so, no man would advance his money at execution sale for land, to have it taken away, by the -tender of the nominal amount he had bid, with ten per cent, in Nashville bank notes. Such a doctrine would make the opera- *246 lion of the execution on land wholly ineffectual. It is no answer, to say, that in this case, the notes were at par with gold and silver. The argument, if good, must rest on the the two statutes before referred to; and by the act of 1819, Nashville bank notes are made receivable, as well as United States bank notes; consequently, all the absurdity above suggested, inevitably follows as a consequence of the assumption, that the tender in this case was a good one.
The truth is, the act of 1820 requires the purchaser at execution sale, to receive such money only as he was bound to pay when he purchased the land. This, in terms, it expresses; and as bank notes are not receivable on executions, so neither is a purchaser at execution sale bound to receive them. But if the act of 1820 had said in express terms, without reference to the act of 1819, that bank notes should be a good tender in payment of the amount bid at an execution sale, it would have been unconstitutional. The constitution of the United States, (art. 1, sec. 10), prohibits any State making “any thing but gold and silver coin, a tender in payment of debts.”
The force of the argument, that a party may become a purchaser or not, at execution sale, as he may choose; and that if he does become a purchaser, he does it upon the condition that he is to give up the land upon receiving the amount of his bid in bank notes, and that therefore the law is constitutional, is not perceived. If a law were passed, making bank notes a good tender in payment of all debts, the same argument might be urged with equal force in its favor. In that case, it might be said, that all contracts which were entered into after its passage, were made with a knowledge of the law, and an implied agreement to receive bank notes in payment. Is it not perceived, that by this sophistry, the whole force of this salutary provision of the constitution of the United States might be destroyed and rendered inoperative?
This provision was inserted to prevent the existence of *247 a spurious and worthless currency, and is of positive paramount obligation. It is true, that United States notes were as valuable as the gold and silver at the time this tender was made; still they were no more gold and silver,, than if they had been fifty per cent under par, and consequently, no better tender when objected to, than Nashville notes would have been.
2. In the second place, it is insisted, that although the bank notes were not a good tender, yet, that this court, in view of the attempt which has been made to redeem this land, can disregard the time fixed by the statute, and permit the complainant now to redeem by paying the amount required in gold and silver. This is asking the court to go beyond its power. The act says, that the land may be redeemed within two years from the day of sale. Until the two years expire, the purchaser’s title is dependent upon a condition; but after the expiration of that time, his title becomes absolute; as much so, as if the act of 1820 had never existed. A party has no more right to redeem after the expiration of the two years, than before the act of 1820, he could have done after a sale and the execution of a deed by the sheriff.
In the case of Hawkins vs. Jamison, (Mart. & Yer. 85), this court decided, that the property purchased at execution sale, under the redemption law, is not held like mortgage property as a security for the money; that if it should, be destroyed before the day fixed for redemption, and before it should be redeemed, it would be the loss of the purchaser, because by the purchase he becomes owner of the property. The court therefore held, that it is like a defeasible sale, where the offer to repurchase must be made by the day limited, or the right is gone forever. Judge Crabh, in delivering the opinion of. the court, says: “the purchaser is the legal owner of the properly sold under execution, by virtue of the deed or bill of sale from the sheriff, as heretofore; subject to the equitable *248 right 0f the debtor, &c. to reclaim or repurchase it upon ^ terms specified in the act.”
In cases of sales, with liberty to repurchase, it is well settled, that the condition must be strictly performed by the day.
In Scott vs. Brittain, (2 Yerg. Rep. 223), Judge Catron in delivering the opinion of tire court, says: “hut if it is a defeasible purchase, the condition must be strictly performed at the day, or no relief will be granted, because it does not admit of compensation for the risk. If the thing perish the next moment, it must be the loss of the purchaser, he having no covenant or even implied promise for the return of the money in that event; and we are taught by a maxim in equity, that in these casual cases, eventual loss or gain must accrue to, or fall on him who runs the risk,” (1 Call’s Rep. 255: 7 Cranch, 227). It must be apparent from what has been said, that this court cannot, upon any principle known to a court of equity, as applicable to this case, compel the defendant, M’Ghee, now to take the money and interest he paid for the land. No tender was made before the day fixed by the act; and the title has vested absolutely in the purchaser.
Decree affirmed.